**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**$121,100.00 IN UNITED STATES CURRENCY, Defendant,**

**Katie Foster, Claimant–Appellant.**

No. 92–8632.

United States Court of Appeals,
Eleventh Circuit.

Sept. 2, 1993.

Emerson Carey, Jr., Atlanta, GA, for claimant-appellant.

Joseph Andre Plummer, Asst. U.S. Atty., Atlanta, GA, for plaintiff-appellee.

Before KRAVITCH and HATCHETT, Circuit Judges, and ATKINS *, Senior District Judge.

KRAVITCH, Circuit Judge:

Appellant Katie Foster seeks relief from a decision of the district court granting summary judgment in favor of the government in this civil forfeiture case. In particular, she challenges the court's holding that a large amount of seized currency alone may be sufficient to establish probable cause for the forfeiture of that currency under the federal drug laws. See 21 U.S.C. § 881(a)(6) (1988). Although we agree with appellant that the district court erred in its reasoning, because summary judgment was proper for other reasons, we affirm the court's judgment.

---

* Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

## I.

On March 19, 1990, Frederick Foster, appellant's decedent and predecessor as claimant to the defendant currency in this case,[1] paid $580 in cash for a round-trip airline ticket for travel from Atlanta to New York. Foster's itinerary called for him to depart Atlanta the following morning at 9:58 a.m. He was scheduled to return later that day on a flight leaving New York at 10:52 p.m.

Soon after Foster purchased the ticket, airline officials alerted law enforcement officials about the transaction and an investigation was begun. On the morning of March 20, two agents from the Drug Enforcement Administration (DEA) approached Foster at the gate for the flight to New York. According to the agents, Foster appeared quite nervous when they interviewed him. The agents discovered that Foster's ticket bore the name "Jerry Foster." Foster told the agents that that was in fact his name. At the agents' request, however, he produced a temporary driver's license bearing his true first name, Frederick.

Suspicious that Foster was transporting narcotics or drug proceeds, the agents, without his consent, ordered Foster's luggage detained. The agents then subjected the bags to a narcotics-detection canine sniff. When the dog alerted to the presence of a controlled substance in Foster's bags and the agents learned from a criminal history check that Foster had been arrested and convicted several times for narcotics violations, they obtained a warrant to search the bags. The resulting search did not expose drugs, but did reveal the defendant $121,100.00. On the strength of these facts, the government commenced civil forfeiture proceedings.

## II.

Under 21 U.S.C. § 881(a)(6),

[a]ll moneys ... furnished or intended to be furnished by any person in exchange for a controlled substance in violation of [the federal narcotics laws], all proceeds traceable to such an exchange, and all moneys ... used or intended to be used to facilitate any violation [of those laws]

are forfeited to the government, with certain exceptions not relevant here. The burdens of production and persuasion in cases brought pursuant to this statute are well settled. Initially, the claimant must establish standing as an owner of the contested property. *E.g., United States v. 1012 Germantown Rd.*, 963 F.2d 1496, 1500 (11th Cir. 1992). The government then bears the burden of establishing probable cause for the belief that the property to be forfeited is substantially connected to drug dealing. *E.g., id.; United States v. Twenty Cashier's Checks*, 897 F.2d 1567, 1568–69 (11th Cir. 1990); *United States v. $41,305.00*, 802 F.2d 1339, 1343 n. 6 (11th Cir.1986). If the probable cause hurdle is overcome, the claimant has the ultimate burden of proving by a preponderance of the evidence that the property derived from a legitimate source. *E.g., 1012 Germantown Rd.*, 963 F.2d at 1501; *United States v. 15603 85th Ave. N.*, 933 F.2d 976, 979 (11th Cir.1991).

After a limited period of discovery, the parties filed cross-motions for summary judgment. At first, the district court granted Foster's motion and denied the government's. The court held that the government's seizure of Foster's luggage violated Foster's rights under the Fourth Amendment.[2] Disregarding evidence obtained from the unconstitutional seizure, the court concluded that the government failed, as a matter of law, to establish any connection between the seized currency and illegal drug activity, and thus failed to meet its burden of demonstrating probable cause for the forfeiture.[3]

---

1. Appellant is the personal representative of Frederick Foster's estate. She was substituted as party claimant by order of this court.

2. The court held that the DEA agents' detention of Foster's luggage was unreasonably long in duration. *See* R. 2–32 at 5–6 (citing *United States v. Puglisi*, 723 F.2d 779, 790–91 (11th Cir.1984)).

3. It was undisputed that Foster had standing as a claimant. Thus, the burden shifted to the government to establish probable cause. Having resolved the probable cause issue against the government, the court never reached the question whether Foster could show that the cash came from a legal source.

On the government's motion for reconsideration, the district court reversed itself. The court rejected the government's argument that the court should have factored in its probable cause calculus Foster's arrest for possession of marijuana twenty-one days prior to the seizure of the currency, because those charges had been dismissed. Nevertheless, the court held that it had been mistaken in believing that a large amount of seized currency alone was insufficient to support a finding of probable cause. Finding that the sheer quantity of seized cash adequately linked the defendant currency to illegal narcotics, the court concluded that probable cause existed for the forfeiture. Accordingly, it ruled that it should not have granted summary judgment in favor of Foster. The court deferred ruling on the government's cross-motion for summary judgment to allow Foster time to proffer evidence that the source of the cash was legitimate. Later, the court ruled that no reasonable person could conclude from Foster's evidence that the funds derived from a legal source. Hence, the court granted summary judgment in favor of the government.

Appellant does not challenge the district court's latter holding that no genuine issue of material fact exists with respect to whether the defendant currency derived from a legitimate source. The sole question is whether the court erred in holding that the government sustained its initial burden of establishing probable cause for the forfeiture.

## III.

■■■ To demonstrate probable cause for forfeiture under 21 U.S.C. § 881(a)(6), the government must present evidence furnishing a "reasonable ground for belief" that a substantial connection exists between the property to be forfeited and an illegal exchange of a controlled substance. *United States v. Real Property in Greene & Tuscaloosa Counties,* 941 F.2d 1428, 1440 (11th Cir.1991) (en banc); *15603 85th Ave. N.,* 933 F.2d at 979; *see United States v. 900 Rio*

Vista Blvd., 803 F.2d 625, 628 (11th Cir. 1986). A "reasonable ground for belief" is less than *prima facie* proof but more than mere suspicion. *15603 85th Ave. N.,* 933 F.2d at 979; *United States v. One 1978 Chevrolet Impala,* 614 F.2d 983, 984 (5th Cir. 1980).[4] It is well established, both in the law of forfeiture and in other areas of the law, that the probable cause inquiry is a flexible one in which the court must consider the "totality of the circumstances." *E.g., Illinois v. Gates,* 462 U.S. 213, 230, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1983) (Fourth Amendment search and seizure); *United States v. 6250 Ledge Rd.,* 943 F.2d 721, 725 (7th Cir. 1991) (forfeiture); *United States v. One 1987 Mercedes 560 SEL,* 919 F.2d 327, 331 (5th Cir.1990) (same); *United States v. Thomas,* 913 F.2d 1111, 1115 (4th Cir.1990) (same).

No court, to our knowledge, has held that the quantity of seized currency alone passes this totality of the circumstances test. To the contrary, in *United States v. $4,255,-625.39,* 762 F.2d 895 (11th Cir.1985), *cert. denied,* 474 U.S. 1056, 106 S.Ct. 795, 88 L.Ed.2d 772 (1986), we "emphasize[d] that ... it is the totality of the circumstances, and not merely the ... amount of money involved, that gives rise to the finding of probable cause." *Id.* at 903 n. 18. Absent some evidence connecting specifically to illegal drugs even a large sum of money, there is no reasonable basis for believing that the money is substantially linked to an illegal exchange of a controlled substance. *See id.* at 903 (holding that nine items of evidence, "coupled with the sheer amount of money involved," established probable cause). As such, currency by itself is insufficient to establish probable cause under section 881(a)(6).

In support of its finding of probable cause the district court in this case quoted from *United States v. $364,960.00,* 661 F.2d 319 (5th Cir. Unit B 1981), that " '[f]rom the sheer quantity of currency seized under these circumstances, a court may permissibly infer a connection with illegal narcotics traf-

---

4. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh

Circuit adopted as circuit precedent all decisions

ficking.' " [5]   In construing this language to mean that probable cause for forfeiture may be based solely on the amount of currency seized, however, the court overlooked the crucial qualifying language "under these circumstances." The *$364,960.00* court stated more fully that

> [t]wo illegal aliens from Colombia, a country where large amounts of the narcotics that enter the United States originate, were apprehended in an apartment in which they claimed no interest, with narcotics, narcotics paraphernalia, guns, and the $364,960.00. From the sheer quantity of currency seized *under these circumstances,* a court may permissibly infer a connection with illegal narcotics trafficking.

661 F.2d at 323–24 (emphasis added). Thus, in that case, the circumstances surrounding the discovery of the currency—including the presence of drugs and drug paraphernalia—provided a critical nexus to illicit drug activity which warranted forfeiture of the currency. The *$364,960.00* court merely held that a large quantity of unexplained cash is *relevant* to the question of probable cause and, *together with evidence relating the cash to drugs,* might provide a reasonable basis for believing that the cash is substantially connected to an illegal exchange of a controlled substance. The district court here erred when it read *$364,960.00* as permitting forfeiture based solely on the amount of currency seized.

■ We hold that a large amount of currency, in and of itself, is insufficient to establish probable cause for forfeiture under 21 U.S.C. § 881(a)(6).

### IV.

■ Our conclusion that the district court misapplied the law regarding the quantity of seized currency, however, does not end the matter. This court will affirm a grant of summary judgment if it is correct for any reason. *Misabec Mercantile, Inc. de Panama v. Donaldson, Lufkin & Jenrette ACLI Futures, Inc.,* 853 F.2d 834, 839 n. 13 (11th Cir.1988); *see Collins v. Seaboard*

*Coastline R. Co.,* 681 F.2d 1333, 1335 (11th Cir.1982) ("If a decision of law is correct, that the lower court incorrectly reasoned its way to that decision is irrelevant on appeal."). The existence of probable cause for forfeiture presents a question of law subject to plenary review by this court. *See Property in Greene & Tuscaloosa Counties,* 941 F.2d at 1438 n. 22; *$4,255,625.39,* 762 F.2d at 903 n. 17; *$364,960.00,* 661 F.2d at 323 & n. 12. Because we conclude that, under the totality of the circumstances, probable cause existed for the forfeiture in this case, we affirm the grant of summary judgment in favor of the government.

Although insufficient by itself to demonstrate a connection to illegal drugs, the quantity of cash seized in this case is highly probative of a connection to some illegal activity. *See, e.g., $4,255,625.39,* 762 F.2d at 903–04; *United States v. $93,685.61,* 730 F.2d 571, 572 (9th Cir.); *cert. denied,* 469 U.S. 831, 105 S.Ct. 119, 83 L.Ed.2d 61 (1984). Moreover, other evidence links the defendant currency to illicit activity in general, and to drug activity in particular. The manner in which Foster purchased his airline ticket and the nature of his travel itinerary cast doubt on the possibility that he was travelling on either business or vacation. Foster purchased the ticket under a false first name. The fact that he carried over $100,000 in his suitcase yet planned only a single-day trip makes it unlikely that he was on vacation. In addition, he paid cash for an airline ticket which cost nearly $600. As the Supreme Court has explained, "[m]ost business travelers ... purchase airline tickets by credit card or check so as to have a record for tax or business purposes." *United States v. Sokolow,* 490 U.S. 1, 8–9, 109 S.Ct. 1581, 1586, 104 L.Ed.2d 1 (1989).

When questioned by the DEA agents, Foster appeared quite nervous. *See United States v. $67,220.00,* 957 F.2d 280, 285–86 (6th Cir.1992) (citing claimant's nervousness as one probative factor). Finally, and *critically,* Foster had a history of narcotics arrests and convictions. From the early 1970s

---

of the former Fifth Circuit rendered prior to October 1, 1981.

**5.** R. 2–40 at 3 (quoting *$364,960.00,* 661 F.2d at 324).

through the mid–1980s, Foster was convicted of controlled substance offenses on at least three occasions.[6]

The government need not connect the defendant currency to any particular drug transaction. *Property in Greene & Tuscaloosa Counties,* 941 F.2d at 1440; *$41,305.00,* 802 F.2d at 1343. Nor must the evidence point to drugs to the exclusion of all other theories. " 'That the evidence presented would support an alternative hypothesis,' "—some other illicit activity, for example—" 'does not prevent it being probative on the issue of probable cause.' " *Property in Greene & Tuscaloosa Counties,* 941 F.2d at 1440 (quoting *$364,960.00,* 661 F.2d at 324). The large quantity of currency, the fact that Foster paid cash for his ticket which was issued under a false first name, and his nervous manner tend to suggest that the currency was tied to some illegal activity. In view of Foster's history of drug violations, a reasonable person could believe that such illegal activity was in fact the exchange of a controlled substance. Thus, the district court did not err in holding that the government established probable cause.

The judgment of the district court is AFFIRMED.

---

**6.** This excludes a 1985 conviction which apparently was subsequently overturned.