UNITED STATES of America, Plaintiff,

v.

THIRTY–THREE THOUSAND EIGHT HUNDRED THIRTY–SIX DOLLARS IN UNITED STATES CURRENCY, Defendant.

Civ. A. No. 94–D–807–N.

United States District Court,
M.D. Alabama,
Northern Division.

Sept. 14, 1995.

John T. Harmon, U.S. Attorney's Office, Montgomery, AL, for plaintiff.

Barry E. Teague, Montgomery, AL, for Robert Lee Franklin, claimant.

## MEMORANDUM OPINION

DE MENT, District Judge.

The above-styled case was tried on July 14, 1995 in the United States District Court for the Middle District of Alabama, Northern Division. The United States of America (hereafter "United States") filed this civil forfeiture action on June 27, 1994, to which the claimant Robert L. Franklin (hereafter "Mr. Franklin") responded in opposition on August 14, 1995. The United States avers that the defendant currency, thirty-three thousand, eight hundred thirty-six and no/100 dollars ($33,836.00), is subject to the forfeiture provisions of 21 U.S.C. § 881(a)(6). In support, the United States contends that said currency was used or intended to be used in exchange for controlled substances or represents proceeds of trafficking in controlled substances, or was used or intended to be used to facilitate a violation of Title II of the Controlled Substances Act, 21 U.S.C. § 801 *et seq.* However, Mr. Franklin responds that the defendant currency was not derived from illegal drug activity but, rather, represents proceeds from gainful employment and gambling activity.

## JURISDICTION & VENUE

Jurisdiction is proper under 21 U.S.C. § 801 *et seq.*[1] Personal jurisdiction and venue are not contested.

## FACTS

On or about February 8, 1995, the defendant currency was seized from the home of Mr. Franklin. The United States contends that the defendant currency is the proceeds of illegal drug transactions. According to the United States, said currency was used or intended to be used to facilitate an illegal drug sale. Moreover, the United States avers that the defendant currency was found commingled with marked money that had been used by a cooperating witness to consummate two controlled purchases of cocaine from Mr. Franklin. Mr. Franklin has been convicted of illegal drug sales.

Mr. Franklin contends that the currency seized from his home at 180 Miller Creek Road in Montgomery, Alabama, does not represent proceeds from illegal drug activity. Specifically, he alleges that the defendant currency was derived from: 1) his work as a subcontractor with Dan Watson (hereafter "Mr. Watson"), as it was allegedly necessary to maintain large sums of cash on hand to satisfy necessary and incidental expenditures of jobs he performed on behalf of Mr. Watson; and 2) gambling with other people including but not limited to Richard Thomas, the owner of Top Flite Disco in Montgomery, Alabama.

## DISCUSSION

▆▆ Section 881(a)(6), 21 U.S.C., subjects to forfeiture United States' currency

exchanged for controlled substances and all proceeds acquired therefrom.[2] In a civil forfeiture action, the initial burden rests with the United States to establish probable cause to forfeit the property.[3] *United States v. Four Parcels of Real Property,* 941 F.2d 1428, 1438 (11th Cir.1991); *United States v. $4,255,000,* 762 F.2d 895 (11th Cir.1985), *cert. denied,* 474 U.S. 1056, 106 S.Ct. 795, 88 L.Ed.2d 772 (1986). Upon a demonstration of probable cause, the burden of proof shifts to the claimant to prove, by a preponderance of the evidence, that the property is not subject to forfeiture; in other words, despite the government's demonstration of probable cause, the money at issue is not connected or related to unlawful drug activity. *Four Parcels of Real Property,* 941 F.2d at 1438 (citations omitted). If the claimant does not meet this burden, the funds are forfeited to the United States. *Id.* at 1439.

▆▆ Whether the United States has demonstrated probable cause is a question of law. *$4,255,000,* 762 F.2d at 903 n. 17; *United States v. $364,960 in U.S. Currency,* 661 F.2d 319, 323 & n. 12 (5th Cir.1981).[4] The Eleventh Circuit has interpreted the probable cause requirement as "probable cause to believe that a substantial connection exists between the property to be forfeited and an illegal exchange of a controlled substance." *United States v. A Single Family Residence and Real Property,* 803 F.2d 625, 628 (11th Cir.1986). The United States is not required to "actually prove by a preponderance of the evidence a substantial connection to drug dealing," *Four Parcels of Real Property,* 941 F.2d at 1440 (quoting *United States v. $41,-*

---

1. Pursuant to 28 U.S.C. § 1331, the federal district courts have "original jurisdiction of all civil actions arising under the.... laws.... of the United States."

2. The forfeiture provision allegedly implicated provides:

    (a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:
    (1) ....
    (6) All moneys, negotiable instruments, securities, or other things of value furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or

    intended to be used to facilitate any violation of this subchapter, except that no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.
    21 U.S.C. § 881(a)(6).

3. It is undisputed that Mr. Franklin has standing as a claimant.

4. Decisions of the former Fifth Circuit rendered prior to October 1, 1981, constitute binding authority in the Eleventh Circuit. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

*305 in Currency & Traveler's Checks,* 802 F.2d 1339, 1343 (11th Cir.1986)), but, rather, establish "reasonable ground for belief" that a nexus exists between the currency to be forfeited and an illegal exchange of a controlled substance. *United States v. $121,100 in U.S. Currency,* 999 F.2d 1503, 1506 (11th Cir.1993) (citations omitted). This burden is "less than prima facie proof but more than mere suspicion." *$121,100,* 999 F.2d at 1506 (citations omitted). Moreover, "[t]he existence of probable cause is judged 'not with clinical detachment, but with a common sense view to the realities of normal life.'" 803 F.2d at 628 (quoting *$4,255,000,* 762 F.2d at 904).

■ The probable cause analysis is flexible with the court focusing on the "totality of the circumstances." *$121,100,* 999 F.2d at 1506 (citations omitted). Further, it is well grounded in the law of forfeiture that "it is the totality of the circumstances, and not merely the … amount of money involved, that gives rise to the finding of probable cause." *$121,100,* 999 F.2d at 1506 (quoting *$4,255,000,* 762 F.2d at 903 n. 18). There must be some evidence connecting a large sum of money to an illegal exchange of a controlled substance. *Id.* (citing *$4,255,000,* 762 F.2d at 903). Accordingly, currency alone is insufficient to establish probable cause under § 881(a)(6). *Id.* at 1506.

■ The United States has presented unrefuted evidence that the defendant currency was commingled with marked cash used in a controlled drug purchase. Clearly, this significant fact is sufficient to satisfy their initial burden.[5] Therefore, the court finds that the United States has established probable cause.

■ The court must next look to whether Mr. Franklin has proved by a preponderance of the evidence that the money had an innocent source and was not related to any drug trafficking, or otherwise refute the government's showing of probable cause. *United States v. $41,305 in Currency & Traveler's Checks,* 802 F.2d 1339, 1343 n. 6 (11th Cir.

1986); *United States v. One Single Family Residence,* 933 F.2d 976, 979 (11th Cir.1991). Mr. Franklin contends that he has met this burden in that the defendant currency was obtained through legal means. The court notes that the presentation of an innocent source cannot vitiate the United States' showing that the source of the currency is illegal activity and more importantly, such a possibility does not constitute a preponderance of the evidence. *$41,305,* 802 F.2d at 1345. Rather, Mr. Franklin "must do more than show the existence of possible legitimate sources of cash." *Id.* The court stresses that Mr. Franklin must establish his financial transactions, and if he fails to meet this burden, the property is forfeited. *Id.*

■ In attempting to meet his burden, Mr. Franklin alleges that 80 percent of his income came from working with Mr. Watson while the remaining 20 percent came from gambling. Testimony of R. Franklin at 22. He admits that none of the cash came from his wife. *Id.* at 23. He further states that he accumulated this money from 1988 till the time of his most recent incarceration. *Id.* In regards to his share of the family's expenses, his testimony is as follows:

Q. Well, now, did you furnish any assistance to your wife and family as far as living expenses?

A. Yes, sir. Pretty much if it was needed, yes sir.

Q. I mean you were responsible to some degree, right, for feeding your children and bringing in food to the house; isn't that correct?

A. Yes, sir.

Q. And you had responsibility for buying clothes and shoes and all the expenses that goes with having children, didn't you?

A. Yes, sir.

Q. Now, did you contribute towards the house payment?

A. No, sir.

Q. Did you contribute towards the upkeep and maintenance of the house?

---

**5.** The court stresses that the United States is not required to connect the defendant currency to any particular drug transaction, and further, the evidence does not have to tie the currency to drugs to the exclusion of all other theories. *$121,100,* 999 F.2d at 1507.

A. As in the way of knowing, I testified I know how to do that kind of stuff myself.

*Id.* at 23–24. As the above testimony indicates, Mr. Franklin admits that he furnished financial assistance as needed to his wife and family. *Id.* at 23.

Given the legal requirements set forth by the Eleventh Circuit, Mr. Franklin must establish his financial transactions regarding the money at issue. However, Mr. Franklin's testimony reveals that he kept no financial records:

Q. Mr. Franklin, did you keep records as to exactly how much of that cash came from this [1099] and how much would come from other sources such as you have alleged in the pretrial order such as gambling?

A. I didn't keep a record, no, sir.

*Id.* at 5. Also, no one appeared in court to corroborate his story that 20 percent of his income represented the proceeds of various gambling endeavors. *See United States v. $14,500 in U.S. Currency,* 767 F.Supp. 1123, 1126 (M.D.Fla.1991). Therefore, the court finds that Mr. Franklin has failed to substantiate that any portion of the money was derived from gambling activities, since he has presented no evidence concerning this claim other than his mere assertion.

Further, Mr. Franklin's tax records clearly contradict his allegation of legitimately earning the money while at the same time contributing toward the expenses of himself and his family. For the tax years 1988 through 1993, he reported income of $51,323. During the same years, he alleges that he saved approximately $34,000 out of the $51,323. The court finds it hard to believe that Mr. Franklin was able to save almost $34,000 while supporting four children.[6] Further, the court notes that testimony reflected that Mr. Franklin paid all the material and labor costs associated with his work for Mr. Watson yet did not show these expenses as a cost. This characterization resulted in Mr. Franklin reporting an excess amount of taxable income since the costs of doing business

are not taxable. The court recognizes that there seems to be evidence supporting the United States' assessment that the currency results from drug transactions, while on the other hand, Mr. Franklin's attack seems totally devoid of any evidentiary foundation.

As a result of the foregoing analysis, the court finds that Mr. Franklin has presented only the possibility of innocent sources, and as the Eleventh Circuit has observed, "such a possibility does not constitute a preponderance of [the] evidence defeating forfeiture." *United States v. $41,305 in Currency & Traveler's Checks,* 802 F.2d 1339, 1345 (11th Cir.1986) (holding that the claimant must "show by a preponderance of the evidence an alternative source for the funds" rather than just showing "the existence of possible legitimate sources of cash."). The court reiterates that the mere conclusory denial of the property's involvement in the violation of the statute by Mr. Franklin is not sufficient to meet his burden of proof that it was not drug proceeds. *See United States v. One Parcel of Property,* 897 F.2d 97, 102 (2d Cir.1990). Further, the fact that Mr. Franklin had in his possession such a large amount of cash is strong evidence that the money was in connection with drugs. *See $14,500,* 767 F.Supp. at 1126 (citing *United States v. $215,300 in U.S. Currency,* 882 F.2d 417, 419 (9th Cir.1989), *cert. denied sub nom. Arboleda v. United States,* 497 U.S. 1005, 110 S.Ct. 3242, 111 L.Ed.2d 752 (1990)).

The court also notes that Mr. Franklin testified that although he had a bank account, he did not keep his cash in the account, because "he trusted [his] home more so than [he] did a bank." Testimony of R. Franklin at 25. However, Mr. Franklin kept a .380 pistol in the same closet where the seized currency was confiscated, and he also had additional firearms around the residence. The court believes that Mr. Franklin realized the vulnerability of his currency in keeping it at home, and therefore, he sought to protect his possession by maintaining a sufficient arsenal around the house. Common sense

---

6. The court again stresses that Mr. Franklin must establish his financial transactions, and if he fails to meet this burden, the property is forfeited. *$41,305,* 802 F.2d at 1345. Mr. Franklin has failed to present any records reflecting the amount of money he spent on himself and his family.

dictates that currency is safer in a bank where it is protected by high security and is insured, rather than in a home where it is subject to robbery and not insured. Therefore, the court does not find this assertion of Mr. Franklin persuasive.

▮ Notwithstanding the fact that Mr. Franklin failed to meet his burden of proof, the court also deems it noteworthy that the Eleventh Circuit has held that "under section 881(a)(6), legitimate funds are forfeitable when knowingly commingled with forfeitable funds." *United States v. One Single Family Residence*, 933 F.2d 976, 981 (11th Cir.1991). Specifically, the Eleventh Circuit stated that "when a claimant to a forfeiture action has actual knowledge, at any time prior to the initiation of the forfeiture proceeding, that [the] claimant's legitimate funds are commingled with drug proceeds ... [then] the legitimate funds are subject to forfeiture." *Id.* (citing *$4,255,000*, 762 F.2d at 905). Here, clearly a certain amount of the funds were forfeitable as marked money was found commingled with the seized currency. Therefore, this analysis provides further support that the currency at issue is forfeitable.

## CONCLUSION

In sum, the United States has met its burden of proving that it had probable cause to seize the currency and initiate this forfeiture action. Mr. Franklin failed to prove by a preponderance of the evidence that the currency should not be subject to forfeiture. The court has no doubt that the currency seized by the United States came from an illegal source and that it was used or was intended to be used for an unlawful purpose. Accordingly, the court finds that the defendant currency in the amount of thirty-three thousand, eight hundred thirty-six and no/100 dollars ($33,836.00), together with the lawful interest thereon, shall be forfeited to the United States of America.