[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-13626

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

$219,970.00 IN UNITED STATES CURRENCY,

Defendant,

KEVIN HARTLEY,

Claimant-Appellant,

2                    Opinion of the Court                    23-13626

YOLIMA A. HARTLEY,

                                                          Claimant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:21-cv-01844-LMM

_____

Before ROSENBAUM, GRANT, and ANDERSON, Circuit Judges.

PER CURIAM:

Kevin Hartley, proceeding *pro se*, appeals the district court's order granting summary judgment in favor of the government in a civil forfeiture action, proceeding under 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(C), for $219,970.00 seized during a traffic stop ("the Defendant Currency"). On appeal, Hartley first argues that the district court erred in determining that he did not dispute the legality of the traffic stop, because his statement in his deposition that he did not change lanes and did not receive a citation for failure to maintain his lane was sufficient to dispute Trooper Jordan Ennis's statements. Second, Hartley argues that the district court incorrectly found that several material facts were not in dispute pertaining to the facts supporting the forfeitability of the Defendant Currency, and therefore the government could not demonstrate that the Defendant Currency was linked to illegal activity. Finally,

Hartley challenges the district court's holding rejecting his argument that the record evidence showed that the government's actions with respect to the notice of forfeiture constituted bad faith or a disregard of his rights.

Because we write only for the parties who are already familiar with the facts, we set out only such facts as are necessary to understand this opinion.

### I. The Traffic Stop and Inventory Search of the Car

We review *de novo* the district court's grant of summary judgment. *Burton v. Tampa Hous. Auth.*, 271 F.3d 1274, 1276 (11th Cir. 2001). Although *pro se* pleadings are held to less stringent standards, issues not briefed on appeal by a *pro se* litigant are deemed abandoned. *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008). We "may affirm for any reason supported by the record, even if not relied upon by the district court." *Hill v. Emp. Benefits Admin. Comm. of Mueller Grp. LLC*, 971 F.3d 1321, 1325 (11th Cir. 2020) (quotation marks omitted).

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment has the initial burden of informing the district court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp.*, 477 U.S. at 323. Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A nonmoving party may dispute a material fact through a declaration, which "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue of material fact. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

Although factual inferences must be viewed in a light most favorable to the nonmoving party at summary judgment and *pro se* complaints are entitled to liberal interpretation, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).

We will not reverse where an error was harmless. *See Knight through Kerr v. Miami-Dade Cnty.*, 856 F.3d 795, 807 (11th Cir. 2017). A harmless error is one that does not affect a party's substantial

rights, and thus is not a basis for vacating or modifying that judgment. Fed. R. Civ. P. 61. Accordingly, the appellant bears the burden to show an error was not harmless. *See Ermini v. Scott*, 937 F.3d 1329, 1343 (11th Cir. 2019).

"Traffic stops qualify as seizures under the Fourth Amendment." *United States v. Perkins*, 348 F.3d 965, 969 (11th Cir. 2003). "An automobile stop is thus subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." *Whren v. United States*, 517 U.S. 806, 810 (1996). As a general matter, the decision to stop an automobile is reasonable where the police have a reasonable suspicion that a traffic violation has occurred, that is, "a particularized and objective basis for suspecting the particular person stopped of breaking the law." *Heien v. North Carolina*, 574 U.S. 54, 57, 60 (2014) (quotation marks omitted). "[T]he constitutional reasonableness of traffic stops [does not depend] on the actual motivations of the individual officers involved." *Whren*, 517 U.S. at 813. Only legally obtained evidence may be used to meet the government's burden under the civil forfeiture standard. *One 1958 Plymouth Sedan v. Com. of Pa.*, 380 U.S. 693, 702 (1965).

Under Georgia law, "[w]henever any roadway has been divided into two or more clearly marked lanes for traffic . . . [a] vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety." O.C.G.A. § 40-6-48(1).

The Fourth Amendment generally requires a warrant before the government can conduct a search of persons, houses, papers, and effects. *Oliver v. United States*, 466 U.S. 170, 176-78 (1984). The Fourth Amendment affords motor vehicles somewhat less protection than other property. *United States v. Wright*, 588 F.2d 189, 193 n.4 (5th Cir. 1979).[1] For example, law enforcement may conduct a warrantless search of a vehicle if the vehicle is readily mobile and law enforcement has probable cause to search it. *United States v. Lindsey*, 482 F.3d 1285, 1293 (11th Cir. 2007).

Another exception to the Fourth Amendment's warrant requirement is "an inventory search of an arrestee's personal property to itemize its contents pursuant to standard inventory procedures." *United States v. Wilson*, 979 F.3d 889, 910 (11th Cir. 2020). "The government carries the burden to show that the requirements of this exception were met." *Id.* The subjective intent of the officer as to the inventory search is irrelevant, as "the mere expectation of uncovering evidence will not vitiate an otherwise valid inventory search." *United States v. Bosby*, 675 F.2d 1174, 1179 (11th Cir. 1982). Georgia Department of Public Safety policy provides an inventory search may be conducted "[w]henever a member arrests the driver/owner of a vehicle and the arrest involuntarily separates the driver/owner from their vehicle, unless the vehicle is released to the control of a custodian designated by the driver/owner

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

23-13626            Opinion of the Court            7

at the time of the arrest." Georgia Department of Public Safety Policy Manual No. 17.06.4(G)(4).

An issue not raised on appeal will be deemed abandoned and will only be addressed in extraordinary circumstances. *United States v. Campbell*, 26 F.4th 860, 872-73 (11th Cir.) (*en banc*) (addressing abandonment in a criminal matter), *cert. denied*, 143 S. Ct. 95 (2022). A party fails to adequately brief a claim when he does not plainly and prominently raise it, for instance by devoting a discrete section of his argument to those claims. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014). Abandonment of a claim or issue can also occur when the passing references to it are made in the "statement of the case" or "summary of the argument" sections, or when only passing references appear in the argument section of an opening brief, particularly when the references are mere background to the appellant's main arguments or when they are buried within those arguments. *Id.* at 681-82.

Here, the district court did not err in determining that there was no genuine issue of material fact as to the legality of the traffic stop because Hartley did not dispute the facts supporting Ennis's decision to stop him, which demonstrated that Ennis had a reasonable suspicion that a traffic violation occurred when he executed the stop. *See Heien*, 574 U.S. at 57, 60.[2]

---

[2] To the extent the district court applied a higher burden by analyzing whether Ennis had probable cause to execute the stop, rather than the lower bar of reasonable suspicion, any such error is harmless because Hartley has not alleged or shown that his substantial rights were affected by the district

First, Hartley's argument that the government failed to provide video evidence of the traffic stop to him or to the court, and that the government was required to submit this evidence to the court, is, at least as to the production aspect, contradicted by the government's statement that it provided the relevant video footage to Hartley during discovery. The government corroborated this by providing the FedEx receipt of its mailing of a CD containing the photos and videos in its response to Hartley's motion to strike. Therefore, we reject Hartley's argument that he was not provided such evidence. As to the second aspect of Hartley's argument— that the government was required to submit this evidence to the court because Hartley challenged Ennis's testimony—as discussed in greater detail below, Hartley's conclusory challenges to Ennis's testimony do not create a genuine dispute of material fact such that the government needed to put forth additional evidence to support Ennis's affidavit. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *Brown*, 906 F.2d at 670.

Second, the traffic stop was justified by Ennis's reasonable articulated suspicion that Hartley committed a traffic violation because Ennis attested that he observed Hartley commit a traffic violation, and Hartley failed to controvert Ennis's testimony that he observed Hartley fail to maintain his lane. *See Heien*, 574 U.S. at 57, 60. A traffic stop is reasonable where, as here, the officer had a

court applying a higher bar to the traffic stop. *See Kerr*, 856 F.3d at 807; Fed. R. Civ. P. 61; *Ermini*, 937 F.3d at 1343.

reasonable suspicion that a traffic violation occurred. *Id.* Ennis's statement that he observed Hartley fail to maintain his lane, in violation of O.C.G.A. § 40 6-48(1), is sufficient to show that he had a reasonable articulable suspicion upon which to base the stop. *See Delgado*, 981 F.3d at 897; O.C.G.A. § 40-6-48(1). Hartley does not contradict this statement in his affidavit or his deposition. Though Hartley argues that his deposition testimony stating that he never changed lanes was sufficient to dispute Ennis's attestation, this argument fails: the statute Hartley was cited under, O.C.G.A. § 40-6-48(1), penalizes the failure to drive within a single lane as well as changing lanes improperly. *See* O.C.G.A. § 40-6-48(1). Therefore, Ennis's statement that Hartley failed to maintain his lane falls squarely within the conduct prohibited by the statute, and Hartley's assertion that he did not change lanes fails to dispute Ennis's statement.

Several of Hartley's arguments, such as his argument that the government failed to provide video of the traffic stop or the relevance of Ennis's issuance of a citation for driving on a suspended license rather than failure to maintain his lane, rest on the incorrect assertion that the government was required to provide more evidence corroborating the statements in Ennis's affidavit than already provided. *See Celotex Corp.*, 477 U.S. at 323; *Delgado*, 981 F.3d at 897. Ennis's affidavit, sworn under penalty of perjury, was proper evidence upon which the court could rely at summary judgment. *See Celotex Corp.*, 477 U.S. at 323. The government therefore sufficiently demonstrated with the evidence provided that there was no genuine issue of material fact as to the purpose

and legality of the traffic stop.  Because Hartley provided no evidence disputing Ennis's statements, as his testimony at his deposition and in his affidavits did not squarely contradict Ennis's statements, and offers only allegations in his briefs directly challenging Ennis's statements, the government was not required to put forth any further evidence.  *See Anderson*, 477 U.S. at 247-48; *Brown*, 906 F.2d at 670.

Finally, Hartley's argument that the district court erred by stating that Hartley's car was the target of a BOLO fails because the district court did not rely on the existence of a BOLO in determining that the traffic stop was permissible.  Instead, the district court relied on Ennis's statement that he stopped Hartley because he observed Hartley fail to maintain his lane.  As discussed above, the district court properly found that Ennis's observation of a traffic violation was sufficient to establish reasonable suspicion upon which to base the stop.  Therefore, any such error was harmless because it was not material to the court's finding, and Hartley failed to demonstrate that if the district court erred, such error was not harmless.  *See* Fed. R. Civ. P. 61; *Ermini*, 937 F.3d 1343.

Hartley failed to challenge in his initial brief on appeal the district court's determination that the inventory search of the vehicle was legal and thus has abandoned the issue.

## II. Forfeitability of the Defendant Currency

The Controlled Substances Act provides for the civil forfeiture of money "furnished or intended to be furnished by any person in exchange for a controlled substance . . . , all proceeds

traceable to such an exchange, and all moneys used or intended to be used to facilitate any violation of this subchapter." 21 U.S.C. § 881(a)(6).

As a result of the enactment of the Civil Asset Forfeiture Reform Act ("CAFRA"), 18 U.S.C. § 981 *et seq.*, in 2000, the government must establish by a preponderance of the evidence that the property is subject to forfeiture. 18 U.S.C. § 983(c)(1). We look at the "totality of the circumstances" when determining whether the government met its burden. *United States v. $121,100.00 in U.S. Currency*, 999 F.2d 1503, 1507 (11th Cir. 1993). The government may use circumstantial evidence, hearsay, and evidence gathered after it filed the civil forfeiture complaint to meet its burden. *United States v. $291,828.00 in U.S. Currency*, 536 F.3d 1234, 1237 (11th Cir. 2008). Additionally, the government is not required to produce evidence connecting the money to a particular narcotics transaction. *United States v. $242,484.00*, 389 F.3d 1149, 1160 (11th Cir. 2004) (*en banc*). It need only show that the money was related to some illegal drug transaction. *Id.* Both the district court and our Court evaluate the evidence presented with a commonsense view to the realities of normal life. *$291,828.00*, 536 F.3d at 1237; *see $242,484.00*, 389 F.3d at 1160. We have recognized that "[a] common sense reality of everyday life is that legitimate businesses do not transport large quantities of cash rubber-banded into bundles and stuffed in packages in a backpack" because "there are better, safer means of transporting cash if one is not trying to hide it from the authorities." *$242,484.00*, 389 F.3d at 1161.

Once the government meets its burden, the burden shifts to the claimant to prove by a preponderance of evidence either a defense to the forfeiture or that the property is not otherwise subject to forfeiture. 18 U.S.C. § 983(d); *United States v. Cleckler*, 270 F.3d 1331, 1334 (11th Cir. 2001). The claimant may satisfy its burden either by refuting the government's evidence or by producing evidence that demonstrates the claimant is an innocent owner. 18 U.S.C. § 983(c), (d); *Cleckler*, 270 F.3d at 1334. The non-movant must demonstrate that there is indeed an issue of material fact that precludes summary judgment. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

The government met its initial burden to show that the Defendant Currency (which was found in Hartley's car during the traffic stop) was related to illegal drug activity by offering Officer Caillouet's affidavit, Officer Ennis's affidavit, and the surveillance photographs, which, taken together, showed that Hartley was affiliated with Peters during the window in which Peters was engaged in drug trafficking activities. Shortly before the officers saw Hartley with Peters, the investigation by law enforcement had located Peters' tractor-trailer at a warehouse affiliated with the drug distribution scheme being investigated. *See* 18 U.S.C. § 983(c)(1); *242,484.00*, 389 F.3d at 1160. Caillouet stated that Hartley drove Peters around and provided the tools with which he worked on the

tractor-trailer used to move cocaine shortly before Peters' arrest, when he was found to be in possession of 13 kilograms of cocaine in his tractor-trailer. And Ennis stated that the Defendant Currency was packaged in a manner consistent with the proceeds of illegal activities. In that vein, this Court has noted that "[a] common sense reality of everyday life is that legitimate businesses do not transport large quantities of cash rubber-banded into bundles and stuffed in packages in a backpack." *See $242,484.00*, 389 F.3d at 116. Taken together, a commonsense view of this evidence supports the conclusion that the Defendant Currency was related to drug trafficking activity. *See $291,828.00*, 536 F.3d at 1237.

Hartley also failed to meet his burden to show that the Defendant Currency was not subject to forfeiture. *See* 18 U.S.C. § 983(d); *Cleckler*, 270 F.3d 1331, 1334. First, as the government notes, Hartley did not introduce any evidence of innocent ownership of the Defendant Currency or propose any manner in which he acquired it. He did not attest in his affidavit to a legitimate source for the money. And at his deposition, he confirmed that his annual income during the relevant period averaged around $50,000 from performing odd jobs but repeatedly evaded questioning as to where the Defendant Currency came from, what it was for, and why he was travelling with such a large amount of cash. In sum, despite ample opportunity, Hartley did not offer evidence of, or even truly allege, innocent ownership.

Nor did he offer even a scintilla of evidence, beyond his own unsupported assertions in his briefs, to refute the government's

demonstration that the Defendant Currency was linked to illegal activity. *See Walker*, 911 F.2d at 1577. In his deposition, he stated only that the money "was nothing illegal." While Hartley did challenge the validity of the narcotics detection dog alert below, the district court explicitly found that even without considering the alert, the government presented sufficient evidence of the Defendant Currency's link to illegal activity. So too, here, Hartley failed to refute the other evidence put forth by the government.

Though Hartley attempts to refute the government's evidence by questioning various facts, such as the date and location of Peters' arrest, they are ultimately immaterial to the government's case, and therefore fail to refute the forfeitability of the Defendant Currency. *See Clark*, 929 F.2d at 608. He does correctly state that law enforcement did not observe him handling drugs, but as the government did not allege that Hartley personally handled drugs during the surveillance window, this statement does not refute the government's evidence supporting forfeiture. *See Clark*, 929 F.2d at 608; *Walker*, 911 F.2d at 1577. Hartley argues that, if the government reasonably believed the Defendant Currency was related to illegal activity, it would have used the Defendant Currency as probable cause to search Peters' trailer. However, that argument does not undermine the government's evidence because Hartley offers no evidence of the actual grounds upon which law enforcement searched Peters' trailer. In sum, Hartley's several arguments and his vague statement in his deposition that the Defendant Currency was not obtained illegally are insufficient to defeat the government's demonstration that no genuine issue of material fact exists

as to the forfeitability of the Defendant Currency.  *See Clark*, 929 F.2d at 608.  Accordingly, the district court did not err in finding that the government showed by a preponderance of the evidence that the Defendant Currency was furnished or intended to be furnished in exchange for a controlled substance, or proceeds derived from such an exchange, and therefore subject to forfeiture.  *See* 21 U.S.C. § 881(a)(6); 18 U.S.C. § 983(c)(1).

### III. Notice of Forfeiture

After seizing property for administrative forfeiture, the government is required to provide notice by publication and to send written notice to all interested parties.  18 U.S.C. § 983(a); 19 U.S.C. § 1607(a).  The publication requirement may be satisfied by publishing once each week for three consecutive weeks in a newspaper of general circulation in the judicial district where the property was seized.  28 C.F.R. § 8.9(a)(1)(i).  The personal written notice must explain the date on which the notice was sent and the deadline for filing a claim; the property seized and the date, statutory basis, and place of the seizure; and the identity of the seizing agency and where a claim may be filed.  *Id*. § 8.9(b).  The agency's notice also must meet the constitutional requirement of due process.  *Mesa Valderrama v. United States*, 417 F.3d 1189, 1196 (11th Cir. 2005).  To be constitutional, notice need only be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Id*. at 1196-97 (quotation marks omitted).  The government need not prove that it provided actual notice; it need only show an attempt to provide actual notice.  *Id*. at 1197.

Upon motion by the government, a court may extend the period for sending notice for up to 60 days, which may be further extended by the court for 60-day periods, as necessary, if the court determines, based on a written certification of a supervisory official in the headquarters office of the seizing agency, that there is reason to believe that notice may have an adverse result, including: endangering the life or physical safety of an individual; flight from prosecution; destruction of or tampering with evidence; intimidation of potential witnesses; or otherwise seriously jeopardizing an investigation or unduly delaying a trial.  18 U.S.C. § 983(a)(1)(C), (D).

Once notified, one may choose to allow the forfeiture to proceed administratively by doing nothing or compel the government to initiate a judicial forfeiture action by filing a claim for the property.  *See id.* § 983(a)(2)(A), (3)(A).  A claim must be made within 35 days of the mailing of notice or, if the letter is not received, within 30 days after the date of final publication of notice of seizure.  *Id.* § 983(a)(2)(B).  After that deadline, there is a limited mechanism for appealing a forfeiture:

> Any person entitled to written notice in any nonjudicial civil forfeiture proceeding under a civil forfeiture statute who does not receive such notice may file a motion to set aside a declaration of forfeiture with respect to that person's interest in the property, which motion shall be granted if—
>
> (A) the Government knew, or reasonably should have known, of the moving party's interest and failed

to take reasonable steps to provide such party with notice; and

(B) the moving party did not know or have reason to know of the seizure within sufficient time to file a timely claim.

*Id*. § 983(e)(1). A motion under § 983(e) is the exclusive remedy for seeking to set aside a forfeiture declaration under a civil forfeiture statute. *Id*. § 983(e)(5); *see also Mesa Valderrama*, 417 F.3d at 1195.

As a protection against bad faith and misconduct, we have discretion to exercise equitable jurisdiction if the claimant's "failure to properly seek legal relief resulted from errors of procedure and form or the government's own misconduct." *In re $67,470.00*, 901 F.2d 1540, 1545 (11th Cir. 1990). However, our "decision to invoke equitable jurisdiction is highly discretionary and must be exercised with caution and restraint." *Id*. at 1544. "Such jurisdiction, therefore, is only appropriate in exceptional cases where equity demands intervention." *Id*.

Here, the district court did not err in determining that there was no genuine issue of material fact as to whether the government complied with the notice requirements of 18 U.S.C. § 983(a)(1)(C) and (D) because the government properly sought and received extensions of the notice period, and Hartley failed to put forth evidence to show that those extensions were fraudulent or otherwise irregular. The district court also did not err in concluding that there was no evidence the government acted with unclean hands, as the extensions were not shown to be fraudulent or irregular.

Moreover, the district court also noted that Hartley did receive actual notice and was able to pursue his claim, so Hartley was not deprived of a remedy at law.

For the foregoing reasons, the judgment of the district court is

**AFFIRMED**.