DONE.

**UNITED STATES of America, Plaintiff,**

v.

**TWO PARCELS PROPERTY LOCATED AT 2730 HIGHWAY 31, JEMISON, CHILTON COUNTY, ALABAMA, With All Appurtenances and Improvements Thereon; Account No. 21–0101–9936 in the Name of "Gene Martin Auto Sales", Located at the First Alabama Bank, Thorsby, Alabama; Five Thousand Six Hundred Thirty–One Dollars ($5,631) in United States Currency; Checks and Money Order in the Amount of Three Thousand Two Hundred Seventy–Two and ⁷⁴/₁₀₀ Dollars ($3,272.74) More Particularly Described Hereinafter, Defendant.**

Civ. A. No. 94–D–608–N.

United States District Court,
M.D. Alabama,
Northern Division.

Oct. 10, 1995.

John T. Harmon, Assistant U.S. Attorney, Redding Pitt, U.S. Attorney, for plaintiff.

William P. Boggs, William R. Hill, Jr., Clanton, AL, for claimants Quida Martin, Margaret Martin and Douglas Eugene Martin.

Ronald Cooper Dhattuck, Tuscaloosa, AL, for claimant First Alabama Bank.

### MEMORANDUM OPINION AND ORDER

DE MENT, District Judge. ·

Before the court is the plaintiff United States' motion for summary judgment filed January 18, 1995. The claimants, Douglas Eugene Martin, Weida Martin and Margaret C. Martin,[1] responded in opposition on February 8, 1995, to which the United States replied· on March 10, 1995. In its reply, the United States also moved the court to strike

---

1. It is undisputed that Margaret Martin, Weida Martin, and Douglas Eugene Martin have standing as claimants.

the affidavit of claimant Douglas Eugene Martin. Thereafter, the claimants responded to the United States' reply and motion to strike on April 7, 1995. After careful consideration of the arguments of counsel, the relevant case law and the record as a whole, the court finds that the United States' motion for summary judgment as to Douglas Eugene Martin's claim and the United States' motion to strike the affidavit of Douglas Eugene Martin are due to be granted.

The United States concedes that claimants Margaret and Weida Martin have raised genuine issues as to their asserted innocent owner defenses so that the ultimate determination of whether their defenses are legitimate is an issue for the jury. Since genuine issues exist as to material facts concerning these claims, the court will not inquire further into these claims, and the United States' motion for summary judgment as to Margaret and Weida Martin's claims is due to be denied.

## JURISDICTION & VENUE

Jurisdiction is proper under 21 U.S.C. § 801 *et seq.*[2] Personal jurisdiction and venue are not contested.

## SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *see also Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions in the file, together with affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *see also* Fed.R.Civ.P. 56(e).

In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356. An action is void of a material issue for trial "[w]here the record taken as a whole

---

**2.** Pursuant to 28 U.S.C. § 1331, the federal district courts have "original jurisdiction of all civil actions arising under the.... laws.... of the United States."

could not lead a rational trier of fact to find for the non-moving party." *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356; *see also Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510.

## FINDINGS OF FACTS

The United States filed this civil forfeiture action on May 20, 1994, "seeking forfeiture of the defendant property located at 2730 Highway 31, Jemison, Chilton County, Alabama, with all appurtenances and improvements thereon, and a certain bank account and cash and financial instruments." Br. in Supp. of Mot. for Summ. J. at 1–2. The United States avers that the defendant properties are subject to the forfeiture provisions of 21 U.S.C. §§ 881(a)(6) and (7). In support thereof, the United States contends that said bank account, cash and financial instruments represent proceeds of trafficking in controlled substances and were used or intended to be used to facilitate a violation of Title II of the Controlled Substances Act, 21 U.S.C. § 801 *et seq. Id.* at 2. The United States further contends that said real properties were used or intended to be used in any manner or part to commit or to facilitate the commission of a violation of 21 U.S.C. § 801 *et seq.,* and which is a violation that is punishable by imprisonment of more than one year. *Id.* However, claimant Douglas Eugene Martin (hereafter "Mr. Martin") responds that the defendant properties were not connected to illegal drug activity.

The United States alleges that the following facts and circumstances support the seizure and forfeiture of the defendant properties. On or about May 3, 1994, a co-operating individual (hereafter "CI") informed local authorities that during past months, he had been associated with and present during numerous transactions in which Mr. Martin conducted illegal transactions involving controlled substances. Within the last two years, the CI allegedly purchased controlled substances numerous times from Eula Webb at her residence in Birmingham, Alabama. The CI obtained either cash or check from Mr. Martin to be used as payment or partial payment for many of these illegal purchases. These checks were drawn on the Gene Martin Auto Sales Account (the defendant account), made payable to the CI and often noted as being issued for the purchase of auto parts or other automotive equipment. However, the United States contends that the CI never sold any such items to Mr. Martin. The arrangements for these purchases and the delivery of the illegally purchased controlled substances were almost always made either at Mr. Martin's home (defendant parcel two) or at the Gene Martin Auto Sales Lot (defendant parcel one).

On or about May 5, 1994, the CI again met with Mr. Martin at the Gene Martin Auto Sales Lot, and thereafter, Mr. Martin gave the CI $350.00 cash for the purchase of 100 Lortab/Lorcet units from the Birmingham source. Later that same date, the CI again met with Mr. Martin at the Gene Martin Auto Sales Lot and informed Mr. Martin that he had been unable to make the Lortab/Lorcet purchase but that any amount of Lortab/Lorcet units could be purchased on May 9, 1994. At that time, the CI returned the $350.00 cash which he had received earlier. Mr. Martin and the CI discussed the purchase of a bottle of 500 units of Lortab/Lorcet, with Mr. Martin purchasing 250 units. These meetings were monitored and the CI was under the control of law enforcement officials.

On or about May 9, 1994, the CI met with Mr. Martin at Gene Martin Auto Sales Lot. At that time, Mr. Martin allegedly gave the CI a check, drawn on the Gene Martin Auto Sales account in the amount of $750.00, noted as being issued for an "Engine for Cougar." The delivery of the Lortab/Lorcet was also discussed. Later that same day, the CI delivered 250 units of Lortab/Lorcet (furnished to him by law enforcement officials) to Mr. Martin at his home. Again, these meetings were monitored and the CI was under the control of law enforcement officials.

On or about May 9, 1994, a search warrant was executed at Mr. Martin's home. While law enforcement officials were entering the premises, Mr. Martin allegedly flushed most of the 250 Lortab/Lorcet units received from the CI down the commode. However, authorities were able to recover approximately 20 Lortab/Lorcet units from the bathroom area and 1 Lortab/Lorcet unit was still in a bag. Law enforcement officials recovered approximately $5,134.68 in checks and

$5,631.00 in cash, which were located in a bank deposit bag at Mr. Martin's home. They also recovered twenty firearms of varying makes and calibers, including an assault rifle and approximately 160 dosage units of suspected controlled substances of various types.

That same day, a search warrant was executed at the Gene Martin Auto Sales Lot. During the search, approximately 233 units of suspected controlled substances of varying types were recovered. Further, a loaded 9mm semi-automatic pistol was found on top of one container allegedly containing suspected controlled substances. Approximately four checks, made payable to the CI on the Gene Martin Auto Sales account, that allegedly had been used to make illegal purchases in the manner described above were also found. Two of these checks were noted as being for a "motor" or for "parts."

Concerning the Gene Martin Auto Sales Lot (defendant parcel one), the claimants allege that this property is owned by claimant Margaret C. Martin. Margaret Martin leased this property to her son, Mr. Martin, to conduct his automobile business and for the purpose of conducting the Martin family farming operation. Aff. of Margaret C. Martin. She alleges that she had no knowledge that this property was being used for anything but the two above mentioned purposes. *Id.*

Concerning Mr. Martin's home (defendant parcel two), this property is owned jointly by Margaret C. Martin, Weida Martin, and Mr. Martin. The claimants allege that the exclusive use of this property is for agricultural purposes.

As to the bank accounts and sums taken from Gene Martin Auto Sales, Inc., the claimants contend that this property was not used or intended to be used in exchange for controlled substances, because the state prosecution on those charges has been dismissed. The claimants further present specific instances where the United States' assertions have been rebutted. For instance, at the hearing on claimants' motion to suppress evidence, the United States' witness

could not identify Mr. Martin's voice as being the one recorded. *See* transcript of hearing at 72, 77, 79 & 82. Furthermore, it was established at the suppression hearing that Mr. Martin repossessed the CI's automobile, which was a black cougar. *Id.* at 26, 28, 43 & 65. The claimants allege that this accounts for the check in the amount of $750.00 being made out for an "Engine for Cougar."

Regarding all the defendant properties, Weida Martin testified at the suppression hearing that she had valid prescription for the controlled substances alleged in the complaint. *Id.* at 84, 86; Def.'s exh. 6, 7. She further asserts that the business records of Gene Martin Auto Sales, Inc. will show that all sums seized were the legitimate proceeds of automobile sales performed by Gene Martin Auto Sales, Inc.

## DISCUSSION

### A. *Motion to Strike*

■ Before proceeding to the issues presented in the summary judgment motion, the court will first address the United States' motion, contained in its reply to the claimants' response to summary judgment, to strike the affidavit of Douglas Eugene Martin (hereafter Mr. Martin), on the grounds that Mr. Martin invoked his Fifth Amendment privilege against self incrimination in refusing to answer the United States' deposition questions.[3]

In support, the United States relies on *United States v. Parcels of Land*, 903 F.2d 36 (1st Cir.1990), in which the First Circuit held that a "district court [has] ample authority to strike [an] affidavit after [the affiant] invoke[s] the fifth amendment and refuse[s] to answer the government's deposition questions." *Id.* at 43. The First Circuit summarized the law behind its holding as follows:

> It is well-accepted that a witness' direct testimony can be stricken if she [or he] invokes the fifth amendment on cross-examination to shield that testimony from scrutiny. *See, e.g., Lawson v. Murray*, 837 F.2d 653, 655–56 (4th Cir.), *cert. denied,*

3. The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself...."

[488] U.S. [831], 109 S.Ct. 87, 102 L.Ed.2d 63 (1988); *Klein v. Harris,* 667 F.2d 274, 287–89 (2d Cir.1981); *see also McGautha v. California,* 402 U.S. 183, 215, 91 S.Ct. 1454, 1471, 28 L.Ed.2d 711 (1971); *Brown v. United States,* 356 U.S. 148, 155–56, 78 S.Ct. 622, 626–27, 2 L.Ed.2d 589 (1958). The power to strike is grounded in the principle that once witness testifies, she may not invoke the fifth amendment privilege so as to shield that testimony from scrutiny. To allow her [or him] to do so would constitute " 'a positive invitation to mutilate the truth.' " *Lawson v. Murray,* 837 F.2d at 656 (quoting *Brown v. United States,* 356 U.S. at 156, 78 S.Ct. at 627). *Id.* Throughout its analysis, the First Circuit basically equated an affidavit with direct testimony. *Id.*

Here, Mr. Martin attempts to avoid the application of the foregoing principles by contending that the facts of the case at bar are distinguishable from the facts in *Parcels of Land.* Def.'s Resp. to United States' Mot. to Strike. Specifically, Mr. Martin states that he did not invoke the Fifth Amendment as to matters covered by his affidavit, and therefore, *Parcels of Land* is not applicable. He further contends that his assertion of the Fifth Amendment to questions concerning controlled substances does not prejudice the United States, because these same matters are covered by his affidavit and were subject to discovery. On the other hand, the United States responds that the claimant in *Parcels of Land,* just as Mr. Martin in this case, also invoked the Fifth Amendment only to questions concerning "his involvement in drug trafficking." *See* 903 F.2d at 42–43.

Essentially, the court finds that Mr. Martin is seeking to invoke his Fifth Amendment privilege in selected areas and then offer evidence in other areas. However, *Parcels of Land* makes it clear that in such a case the court has the authority to strike the entire affidavit. *Id.* at 43. In *Parcels of Land,* the claimant invoked the Fifth Amendment in response to all questions concerning his involvement in drug trafficking, sources of income, and use of narcotics proceeds. *Id.* at 42–43. Here, Mr. Martin has invoked his Fifth Amendment privilege on all questions related to his involvement with controlled substances. *See* Depo. of Gene Martin at 13, 21–22, 41–43. The court finds that this is clearly prejudicial to the United States as Mr. Martin has refused to answer *any* question as to whether he has committed any unlawful acts with regard to controlled substances from which this forfeiture action is *entirely* based. Therefore, the court finds that Mr. Martin's· assertion that *Parcels of Land* is distinguishable from the case at bar has no merit.

Mr. Martin further relies on two cases which he cites for the authority that because the affidavits in this case raise issues of material facts, a motion to strike is improper. *Phillips Mach. Co. v. LeBlond, Inc.,* 494 F.Supp. 318 (N.D.Okla.1980); *Coca–Cola Co. v. Howard Johnson Co.,* 386 F.Supp. 330 (N.D.Ga.1974). The United States contends that both of these cases deal with the assertion of defenses by a party, and here, the United States is seeking to strike an affidavit not a defense. Thus, the United States argues that these cases have no factual relationship to the present case. Upon a careful reading of these cases, the court finds that this response by the United States has merit as the cases cited by Mr. Martin concern a motion to strike a defense not an affidavit. *See* 494 F.Supp. at 320; 386 F.Supp. at 333.

Finally, Mr. Martin asserts that his affidavit raises issues of material fact regarding whether this case is subject to the Excessive Fines Clause of the Eighth Amendment,[4] and therefore, the affidavit should not be stricken. In regards to this assertion, the United States contends that this is a legal question reserved for the scrutiny of the court.

In addressing this contention, the court recognizes that the Supreme Court of the United States has held that civil forfeiture is subject to the limitations of the Eighth Amendment's Excessive Fines Clause. *Austin v. United States,* 509 U.S. 602, ——, 113 S.Ct. 2801, 2812, 125 L.Ed.2d 488 (1993); *Alexander v. United States,* 509 U.S. 544, ——, 113 S.Ct. 2766, 2776, 125 L.Ed.2d 441 (1993). However, in both *Austin* and *Alexander,* the Court "declined to

---

**4.** The Eighth Amendment states that "[e]xcessive bail shall be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

establish a test to determine when such forfeiture is excessive and thereby unconstitutional." *United States v. One Parcel Property*, 842 F.Supp. 1421, 1429 (M.D.Ala.1994). In fact, the Court in *Austin* expressly referred the question of an appropriate test to the lower courts. *Id.* (citing 509 U.S. at ——, 113 S.Ct. at 2812); *see also Yee v. City of Escondido*, 503 U.S. 519, 537, 112 S.Ct. 1522, 1534, 118 L.Ed.2d 153 (1992) ("[p]rudence dictates that we allow the lower courts to consider that question in the first instance.").

In *One Parcel Property*, the court adopted the standard developed by Justice Scalia in his *Austin* concurrence, setting forth a test to determine when a forfeiture is excessive. 842 F.Supp. at 1429. Specifically, Justice Scalia stated that the "relevant inquiry for an excessive forfeiture under § 881 is the relationship of the property to the offense: Was it close enough to render the property, under traditional standards, 'guilty' and hence forfeitable?" *Id.* (quoting *Austin*, 509 U.S. at ——, 113 S.Ct. at 2815 (Scalia, J., concurring in part and concurring in judgment)). This "instrumentality" test analyzes the "nexus between the property seized and the crime committed." *Id.* ("[t]he question is not *how much* the confiscated property is worth, but *whether* the confiscated property has a close enough relationship to the offense." (emphasis in original)). The court, just as the court in *One Parcel Property*, finds Justice Scalia's test to be well reasoned and will apply it to the case at bar.[5]

The court finds, as discussed *infra*, that the evidence establishes that there is probable cause to believe that the defendant properties are substantially connected to controlled substances. In using Justice Scalia's language, the relationship of the defendant properties to the illegal drug activity was close enough to render these properties "guilty." *See One Parcel Property*, 842 F.Supp. at 1430. Thus, the court concludes that this case does not violate the Excessive Fines Clause of the Eighth Amendment. As a result of the foregoing analysis, the court concludes that the affidavit of Mr. Martin shall be stricken. Because the above mentioned affidavit is stricken, the court will not consider the affidavit in its analysis of the motion for summary judgment.

### B. Civil Forfeiture Law

#### 1. Probable Cause

Section 881(a)(6), 21 U.S.C., subjects to forfeiture United States' money, negotiable instruments, securities and other things of value furnished or intended to be furnished in exchange for controlled substances and all proceeds acquired therefrom.[6] Section 881(a)(7), 21 U.S.C., states that any right, title, and interest in real property used or intended to be used to commit or facilitate the commission of a violation of 21 U.S.C. § 801 *et seq.* punishable by more than one year's imprisonment is forfeitable and the only bar to forfeiture is the innocent owner defense.[7]

---

5. The court also notes that it agrees with the court in *One Parcel Property* that the Eleventh Circuit will either adopt Justice Scalia's test or a standard that is not inconsistent with it. *See* 842 F.Supp. at 1430.

6. Section 881(a)(6) provides:
(a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:
(1) ....
(6) All moneys, negotiable instruments, securities, or other things of value furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter, except that no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner

to have been committed or omitted without the knowledge or consent of that owner.
21 U.S.C. § 881(a)(6).

7. Section 881(a)(7) deals specifically with the forfeiture of real property and provides:

(a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:
(1) ...
(7) All real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this subchapter punishable by more than one year's imprisonment, except that no property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission estab-

 The burdens of production and persuasion in § 881 forfeiture proceedings are well established by statute and case law. *See United States v. $121,100.00 in U.S. Currency,* 999 F.2d 1503, 1505 (11th Cir.1993); *United States v. One Parcel of Real Estate,* 963 F.2d 1496, 1499 (11th Cir.1992). When the United States moves for summary judgment in a § 881 civil forfeiture action, the initial burden rests with the United States to establish probable cause to forfeit the property. *United States v. Four Parcels of Real Property,* 941 F.2d 1428, 1439 (11th Cir. 1991). If the United States fails to establish probable cause, summary judgment for the United States is improper.[8] *Id.* at 1439 (citing *United States v. Twenty (20) Cashier's Checks, Having the Aggregate Value of Two Hundred Thousand ($200,000) Dollars in U.S. Currency,* 897 F.2d 1567, 1570 (11th Cir.1990) (per curiam)). Upon a demonstration of probable cause, the burden of proof shifts to the claimant to prove, by a preponderance of the evidence, that the property is not subject to forfeiture; in other words, despite the United States' demonstration of probable cause, the properties at issue are not connected or related to unlawful drug activity. *Four Parcels of Real Property,* 941 F.2d at 1438 (citations omitted); *United States v. Lot 5, Fox Grove, Alachua County,*

*Florida,* 23 F.3d 359, 364 (11th Cir.1994) (interpreting §˙881(a)(7)). If the claimant does not meet this burden, the property is forfeited to the United States. *Id.* at 1439.

 Whether the United States has demonstrated probable cause is a question of law. *United States v. Four Million, Two Hundred Fifty–Five Thousand,* 762 F.2d 895, 903 n. 17 (11th Cir.1985), *cert. denied,* 474 U.S. 1056, 106 S.Ct. 795, 88 L.Ed.2d 772 (1986); *United States v. $364.960 in U.S. Currency,* 661 F.2d 319, 323 & n. 12 (5th Cir.1981).[9] The Eleventh Circuit has interpreted the probable cause requirement as "probable cause to believe that a substantial connection exists between the property to be forfeited and an illegal exchange of a controlled substance."[10] *United States v. A Single Family Residence and Real Property,* 803 F.2d 625, 628 (11th Cir.1986); *see also $121,100.00,* 999 F.2d at 1505; *United States v. Real Property and Residence,* 921 F.2d 1551, 1556 n. 8 (11th Cir.1991) (interpreting § 881(a)(7)). The United States is not required to "actually prove by a preponderance of the evidence a substantial connection to drug dealing," *Four Parcels of Real Property,* 941 F.2d at 1440 (quoting *United States v. $41,305.00 in Currency & Traveler's Checks,* 802 F.2d 1339, 1343 (11th Cir.1986)), but, rather, establish " 'reasonable ground for be-

---

lished by that owner to have been committed or omitted without the knowledge or consent of that owner.
21 U.S.C. § 881(a)(7).

8. The United States, as the moving party, bears the "initial responsibility of informing the ... court" why it believes it has probable cause for forfeiture. *See Four Parcels of Real Property,* 941 F.2d at 1439 n. 25 (citing *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552). Further, the court notes that when the issue of probable cause is decided on summary judgment, "the court may determine probable cause based on all the evidence adduced by the [United States]; in essence, the court considers the [United States'] complaint to be amended to conform to the evidence. *Id.* at 1439 n. 24 (citations omitted).

9. Decisions of the former Fifth Circuit rendered prior to October 1, 1981, constitute binding authority in the Eleventh Circuit. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

10. Two standards exist in the United States Courts of Appeals as to what the United States must prove to establish probable cause for forfei-

ture of real property under § 881(a)(7). One standard sets forth that the United States must prove that the real property had a "substantial connection" to the illegal activity. The other merely requires that the United States demonstrate only a "nexus" between the seized property and the illegal activity. *See United States v. One Parcel Property,* 842 F.Supp. 1421, 1426 n. 10 (M.D.Ala.1994) (summarizing the views of the different Circuits).

The Eleventh Circuit has not expressly adopted either a "substantial connection" standard nor a "nexus" standard for forfeiture under § 881(a)(7). *United States v. Approximately 50 Acres of Real Property,* 920 F.2d 900, 902 (11th Cir.1991) (per curiam). However, "[t]he Eleventh Circuit ... has recognized that district courts within the Circuit are applying the substantial connection test in actions under § 881(a)(7), thus extending its holding that the test applies in forfeiture actions under 21 U.S.C. § 881(a)(4) and § 881(a)(6)." *One Parcel Property,* 842 F.Supp. at 1426 n. 10. Thus, the court will apply the substantial connection test to § 881(a)(7). In other words, the court will apply the same probable cause standard to § 881(a)(6) and (7).

lief' that a substantial connection exists between the defendant property to be forfeited and an illegal exchange of a controlled substance." *$121,100.00*, 999 F.2d at 1506 (citations omitted).

This burden is "less than prima facie proof but more than mere suspicion." *$121,100.00*, 999 F.2d at 1506 (citations omitted); *United States v. One Single Family Residence*, 933 F.2d 976, 979 (11th Cir.1991). Moreover, "[t]he existence of probable cause is judged 'not with clinical detachment, but with a common sense view to the realities of normal life.'" *A Single Family Residence*, 803 F.2d at 628 (quoting *Four Million, Two Hundred Fifty–Five Thousand*, 762 F.2d at 904). The probable cause analysis is flexible with the court focusing on the "totality of the circumstances." *$121,100.00*, 999 F.2d at 1506 (citations omitted); *A Single Family Residence*, 803 F.2d at 629 n. 2. Furthermore, "[p]robable cause may be established by circumstantial evidence and hearsay testimony." *United States v. One Parcel Property*, 842 F.Supp. 1421, 1426 (M.D.Ala.1994) (citing *A Single Family Residence*, 803 F.2d at 629 n.

2; *United States v. Three Hundred Sixty Four Thousand Nine Hundred Sixty Dollars*, 661 F.2d 319, 325 (5th Cir. Unit B 1981)).[11]

The court may also consider evidence learned after the actual seizure. *One Parcel Property*, 842 F.Supp. at 1427 (citing *$41,305.00*, 802 F.2d at 1343). However, the United States is not permitted to use facts learned after it filed this forfeiture action. *Id.* (citing *United States v. Ninety One Thousand Nine Hundred Sixty Dollars*, 897 F.2d 1457, 1462 (8th Cir.1990)).

The court will now address the probable cause issue separately as to each defendant property. Under § 881(a)(6), the United States seeks (1) account number 21–0101–9936 in the name of "Gene Martin Auto Sales," located at the First Alabama Bank in Thorsby, Alabama; (2) five thousand six hundred thirty-one dollars ($5,631) in United States currency; and (3) checks and money order in the amount of three thousand two hundred seventy-two and $^{74}/_{100}$ dollars ($3,272.74). The checks and money order are more specifically described as follows:

| Check | Financial Institution | Drawn From Account Of | Amount |
|---|---|---|---|
| 1293 | First Alabama Bank | Rhonda M. Evans | $ 100.00 |
| 0310 | First Alabama Bank | Cynthia Smitherman | $ 245.74 |
| 0128 | First Alabama Bank | Kenneth M. Smith | $ 54.00 |
| 0487 | Colonial Bank | Tammy Scoggins | $ 40.00 |
| 0117 | Colonial Bank | Kelley Langston | $ 600.00 |
| 0860–05019 | Norwest Financial | (Pay to) Gene Martin Auto Sales | $2,125.00 |
| 60379852037 940506 299450 | | | |
| | U.S. Postal Money Order | (Pay to) Gene Martin Auto Sales | $ 108.00 |

*See* Warrant of Arrest In Rem and Writ of Entry for Inspection and Appraisal. The court recognizes that the sum of these checks and money order equals three thousand two hundred seventy-two and $^{74}/_{100}$ dollars ($3,272.74).

It is well grounded in the law of forfeiture under § 881(a)(6) that "it is the totality of the circumstances, and not merely the ... amount of money involved, that gives rise to the finding of probable cause." *$121,100.00*, 999 F.2d at 1506 (quoting *Four Mil-*

**11.** Decisions of the former Fifth Circuit, Unit B, rendered after September 30, 1981, are binding precedent in the Eleventh Circuit. *United States v. Four Million, Two Hundred Fifty–Five Thou-*
*sand*, 762 F.2d 895, 903 n. 15 (11th Cir.1985), *cert. denied*, 474 U.S. 1056, 106 S.Ct. 795, 88 L.Ed.2d 772 (1986) (citing *Stein v. Reynolds Sec., Inc.*, 667 F.2d 33, 34 (11th Cir.1982)).

*lion, Two Hundred Fifty–Five Thousand,* 762 F.2d at 903 n. 18). There must be some evidence connecting a large sum of money to an illegal exchange of a controlled substance. *Id.* (citing *Four Million, Two Hundred Fifty–Five Thousand,* 762 F.2d at 903). Accordingly, currency alone is insufficient to establish probable cause under § 881(a)(6). *Id.*

 The United States has presented evidence that authorities recovered approximately twenty Lortab/Lorcet units from the bathroom area of Mr. Martin's home and one unit from a bag at his home. Law enforcement officials also recovered approximately $5,134.68 in checks and $5,631.00 in cash in a bank deposit bag at Mr. Martin's home, and twenty firearms of varying makes and calibers, including an assault rifle. Authorities also recovered approximately 160 dosage units of suspected controlled substances of various types. That same day, approximately 233 units of suspected controlled substances of various types were recovered from the Gene Martin Auto Sales Lot. Also, four checks, made payable to the CI on the Gene Martin Auto Sales account, were found at the Gene Martin Auto Sales Lot. These checks allegedly had been used to make illegal purchases of controlled substances. Two of these checks were noted as being for a "motor" or for "parts."

As the above facts indicate, the court finds that the circumstances surrounding the discovery of the currency—including the presence of drugs—provide a critical nexus to illicit drug activity. *See $121,100.00,* 999 F.2d at 1507 (interpreting *United States v. $364,960.00,* 661 F.2d 319 (5th Cir. Unit B 1981)). Also, the United States has likely proven that the CI obtained either cash or check from Mr. Martin to be used as payment for controlled substances. These checks were drawn on the Gene Martin Auto

Sales account (the defendant account) made payable to the CI. Further, the CI's actions support a reasonable belief that the four checks found at the Gene Martin Auto Sales Lot were exchanged for or intended to be exchanged for drugs. Clearly, all this evidence supports the finding of probable cause.[12] The court also notes that Mr. Martin's prior criminal record is probative of illegal drug activity.[13] *See United States v. $68,580.00 in U.S. Currency,* 815 F.Supp. 1479, 1483 (M.D.Ga.1993); *see also United States v. U.S. Currency $83,310.78,* 851 F.2d 1231, 1236 (9th Cir.1988) (evidence of two prior convictions for possession, in addition to a prior arrest for possession, probative of probable cause).

The particulars of the probable cause analysis of § 881(a)(7) are succinctly stated in *United States v. One Parcel of Real Estate,* 852 F.Supp. 1013 (S.D.Fla.1994), from which the court quotes:

A direct connection between the property subject to seizure and the illegal activity that renders property forfeitable need not be shown in order to establish probable cause. "[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." "Probable cause" is more commonly used in the search and seizure context, but its meaning here is no different: the government must supply evidence that, under the totality of the circumstances, establishes reasonable grounds for believing that the property facilitated the sale of drugs. "Facilitate" means to make the illegal activity "easy or less difficult."

*Id.* at 1033 (internal citations omitted). The court went on to note that the term "facilitate" should be "broadly construed and should include a situation in which property is used as a cover for drug trafficking." *Id.*

---

12. The court stresses that the United States is not required to connect the defendant currency to any particular drug transaction, and further, the evidence does not have to tie the currency to drugs to the exclusion of all other theories. *$121,100.00,* 999 F.2d at 1507. It is also important to remember that absolute evidence of criminal activity is not necessary to establish probable cause. *United States v. 14128 South School Street, Riverdale, Ill.,* 774 F.Supp. 475 (N.D.Ill. 1991).

13. Mr. Martin has a prior felony conviction for distributing cocaine. Depo. of Gene Martin at 11. The court also notes that it does not take into account Mr. Martin's prior conviction of buying and receiving stolen goods as this conviction is not drug related. *See* 815 F.Supp. at 1483.

(citing *United States v. Rivera*, 884 F.2d 544, 546 (11th Cir.1989), *cert. denied*, 494 U.S. 1018, 110 S.Ct. 1322, 108 L.Ed.2d 497 (1990)). Further, the court noted that the Eleventh Circuit has determined that "property is 'intended to be used' for an illegal activity when a person contemplates using the property in the future, and that person actually takes some 'minimum initial step' to use the property." *Id.* (citing *United States v. One 1980 Bertram 58' Motor Yacht*, 876 F.2d 884, 887–88 (11th Cir.1989) (interpreting "intended to be used" language of 21 U.S.C. § 881(a)(4)).

In this case, the United States has established probable cause that defendant parcel one and two were used to store controlled substances and to facilitate transactions involving controlled substances. *See United States v. One Parcel of Real Estate*, 768 F.Supp. 340, 344 (S.D.Fla.1991) (found probable cause that residence was substantially connected to prohibited narcotics transaction based on evidence that narcotics transaction took place in residence and that cocaine, marijuana, and narcotics paraphernalia were found in residence). To begin, the United States has proven that the arrangements for these illegal purchases and the delivery of the controlled substances were almost always made either at the Gene Martin Auto Sales Lot (defendant parcel one) or at Mr. Martin's home (defendant parcel two). Moreover, a search of the residence and business disclosed Lortab/Lorcet units and an other suspected controlled substances. Thus, the court finds that there can be little doubt that the United States has met its burden as to the issue of probable cause under § 881(a)(7).

█ In further support of probable cause under subsections (6) and (7), the court stresses that "[it] may draw an adverse inference against parties to civil actions when they refuse to testify in response to probative evidence offered against them without violating the parties' Fifth Amendment rights." *United States v. Two Parcels of Real Property*, 868 F.Supp. 306, 311 (M.D.Ala.1994) (citing *United States v. A Single Family Residence*, 803 F.2d 625, 629 n. 4 (11th Cir.1986)); *see also United States v. Premises Located at Route 13*, 946 F.2d 749, 756 (11th Cir.1991); *Baxter v. Palmigiano*, 425 U.S. 308, 318–19, 96 S.Ct. 1551, 1558, 47 L.Ed.2d 810 (1976). However, the Eleventh Circuit has recognized an exception to this general rule: "the Fifth Amendment is violated when a person, who is a defendant in both a civil and a criminal case, is forced to choose between waiving his privilege against self-incrimination or losing the civil case on summary judgment." *Premises Located at Route 13*, 946 F.2d at 756 (citing *Pervis v. State Farm Fire & Casualty Co.*, 901 F.2d 944, 946–47 (11th Cir.), *cert. denied*, 498 U.S. 899, 111 S.Ct. 255, 112 L.Ed.2d 213 (1990)). Essentially, the exception applies when the assertion of the privilege would result in "automatic entry of summary judgment." *Id.* (quoting *Pervis*, 901 F.2d at 947).

█ In this case, Mr. Martin asserted his Fifth Amendment right not to testify in his deposition in response to probative evidence offered against him. The court stresses that the criminal charges against Mr. Martin were dismissed, and therefore, he currently is not the subject of a criminal prosecution for alleged illicit drug activities.[14] As a result, the court may draw an adverse inference against Mr. Martin concerning responses in which he asserted his Fifth Amendment privilege. *See Two Parcels of Real Property*, 868 F.Supp. at 311 (citing *A Single Family Residence*, 803 F.2d at 629 n. 4); *Premises Located at Route 13*, 946 F.2d at 756; *Baxter*, 425 U.S. at 318–19, 96 S.Ct. at 1558 (holding that the Fifth Amendment "does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them"). Thus, the court infers that Mr. Martin's testimony, to questions in which he asserted his Fifth Amendment privilege, would not have been favorable to his position as a claimant of the defendant properties. *See Two Parcels of Real Property*, 868 F.Supp. at 311; *Baxter*, 425 U.S. at 318–19, 96 S.Ct. at 1558.

In light of this inference, the court views the answers to questions, from which Mr. Martin asserted his Fifth Amendment privilege concerning controlled substances, as follows:

---

14. *See* Copy of Mot. to Dis. attached to Aff. of Douglas Eugene Martin; *see also* Copy of Indict. attached to Aff. of Douglas Eugene Martin (indicting Mr. Martin on allegedly violating 18 U.S.C. § 922(g)(1)—illegally possessing firearms).

Q. Did you [Mr. Martin] ever meet with Mr. Rogers at your home regarding the purchase or receipt of Lorcet, Lortab controlled substances?

A. [Yes]

Q. Did you [Mr. Martin] ever give Mr. Rogers a check in order to facilitate the purchase of Lorcet, Lortab, or other controlled substances on your automobile dealership account?

A. [Yes]

Q. Now specifically, have you [Mr. Martin] ever sold Lortab or Lorcet or other controlled substances to any individuals?

A. [Yes]

Q. Have you [Mr. Martin] ever distributed Lorcet, Lortab[ ] to any individual in exchange for work or other services?

A. [Yes]

Depo. of Gene Martin at 21–22.

Q. Now, Mr. Martin, you were—I believe you were present when the law enforcement agents executed a search warrant at your home and, I think, subsequently at the car lot in May of 1994?

A. [Yes]

Q. To your [Mr. Martin] knowledge, did the police officers involved in the execution of this search warrant recover quantities of Lorcet, Lortab tablets?

A. [Yes]

Q. Do you [Mr. Martin] maintain that there is an adequate prescription record to show a legitimate source for all the controlled substances that were maintained or found in your home and at the car lot during the execution of the search warrant?

A. [No]

Q. Have you [Mr. Martin] ever given any individual cash or a check to be used as payment or partial payment for illegal purchase of controlled substances?

A. [Yes]

Q. Have you [Mr. Martin] ever given anyone a check or other financial instru-

ment denoted thereon as being for a car part or for any other car related item or car service when, in fact, the check was not for the car part or car service so denoted on that check?

A. [Yes]

Q. Have you [Mr. Martin] ever met with any individuals at your home to discuss the purchase of controlled substances?

A. [Yes]

Q. Have you [Mr. Martin] ever met with any individuals at the car lot to discuss the purchase of controlled substances?

A. [Yes]

Q. Have you [Mr. Martin] ever received controlled substances at your home?

A. [Yes]

Q. Have you [Mr. Martin] ever received controlled substances at the car lot?

A. [Yes]

Q. Have you [Mr. Martin] ever made payment either by cash or check for controlled substances at your home?

A. [Yes]

Q. Have you [Mr. Martin] ever made payment either by cash or check for controlled substances at your car lot?

A. [Yes]

Depo. of Gene Martin at 40–43. However, since he currently is the subject of a criminal prosecution for illegally possessing firearms, the court will not draw an adverse inference against Mr. Martin to questions relating to firearms in which he asserted his Fifth Amendment privilege against self-incrimination.

After conducting the above probable cause analysis and examining the totality of the evidence presented by the United States, as a matter of law, the court concludes that the United States has clearly demonstrated that it had probable cause, more than a mere suspicion, to believe the defendant properties had a substantial connection with illegal drug transactions.[15] If

---

**15.** The court again stresses that the United States is not required to connect the defendant property to any particular drug transaction, and further, the evidence does not have to tie the currency to drugs to the exclusion of all other theories. *$121,100.00*, 999 F.2d at 1507; *One Parcel of Real Estate*, 852 F.Supp. at 1032 (citing *United States v. 228 Acres of Land*, 916 F.2d 808, 812 (2d Cir.1990), *cert. denied sub nom. Moreno v. United States Drug Enforcement Admin.*, 498 U.S. 1091, 111 S.Ct. 972, 112 L.Ed.2d 1058 (1991); *United States v. One 1987 Jeep Wrangler*, 972 F.2d 472, 476 (2d Cir.1992)). Further, the court notes that "[p]roperty is forfeitable even without the presence of contraband." *One Parcel of Real Estate*,

unrebutted, a showing of probable cause is sufficient to support a forfeiture. *United States v. Little Al*, 712 F.2d 133, 136 (5th Cir.1983).

#### 2. *Claimant's Burden*

██ The court must next look to whether Mr. Martin has proved by a preponderance of the evidence that a reasonable jury could find that the defendant properties are not subject to forfeiture. *United States v. $41,-305.00 in Currency & Traveler's Checks*, 802 F.2d 1339, 1343 n. 6 (11th Cir.1986); *United States v. One Single Family Residence*, 933 F.2d 976, 979 (11th Cir.1991); *Four Parcels of Real Property*, 941 F.2d at 1439. Mr. Martin can meet this burden by either rebutting the United States' evidence, or by showing that he was an innocent owner. *United States v. Route 2, Box 472, 136 Acres More or Less*, 60 F.3d 1523, 1525 (11th Cir.1995). Here, Mr. Martin attempts to rebut the showing of probable cause, and he asserts the innocent owner defense.

In attempting to rebut the United States' showing of probable cause, Mr. Martin first states that the United States could not identify his voice "as being the one recorded by the Government." However, the court finds that this evidence, standing alone, is insufficient to rebut the United States' showing of probable cause. The evidence only reveals that *one* witness testifying at the hearing could not identify Mr. Martin's voice.

Next, in attempting to rebut the showing of probable cause, Mr. Martin cites portions of the suppression hearing which consist of the cross examination of a United States' witness. *See* Br. in Supp. of Def.'s Mot. to Deny Pl.'s Mot. for Summ.J. However, as the United States correctly asserts, the Eleventh Circuit has stated that mere cross examination is not sufficient evidence to rebut a showing of probable cause. *United States v. A Single Family Residence*, 803 F.2d 625, 629–30 (11th Cir.1986) (citing *United States v. One 1978 Chevrolet Impala*, 614 F.2d 983, 984 (5th Cir.1980)). Thus, the appropriate inquiry is whether the United States' evidence establishes probable cause. *Id.* As previously discussed, probable cause was es-

tablished by overwhelming evidence in this case. *See supra* pp. 1458–1463.

Further, even if Mr. Martin's arguments were properly before the court, the court finds that they are not sufficient to rebut the showing of probable cause. For instance, there is no merit to the argument that the controlled substances described in the complaint were not those found at Mr. Martin's residence. The transcript refers to Lortabs and the complaint refers to Lortab/Lorcet, and thus the court finds that there is no discrepancy between the transcript and the complaint.

Also, the other issues raised by Mr. Martin, concerning the repossession of the CI's car, do raise questions concerning certain payments of money to the CI but fail to rise to a level sufficient to rebut the United States' overwhelming evidence of probable cause. In making this determination, the court relies on the deposition of Mr. Martin in which he asserts his Fifth Amendment right against self-incrimination when he is questioned as to whether he has "ever given a check or other financial instrument denoted thereon as being for a car part or for any other car related item or car service when, in fact, the check was not for the car part or car service so denoted on that check" and as to whether he has "ever give[n] [the CI] a check in order to facilitate the purchase of Lorcet, Lortab, or other controlled substances on [his] automobile dealership account." The court, as discussed *supra*, makes an inference that the answers to these questions would not be favorable to his claim. Thus, these questions and respective answers by Mr. Martin lead the court to believe that the probable cause showing has not sufficiently been rebutted.

██ The innocent owner defense is expressly provided for in § 881(a)(6) and (7) as follows: "... no property shall be forfeited ... to the extent of the [an] interest of an owner, by reason of any act or omission established by the [that] owner to have been committed or omitted without the knowledge or consent of that owner."[16] 21 U.S.C.

---

852 F.Supp. at 1033 (citing *United States v. One 1980 Bertram 58' Motor Yacht*, 876 F.2d 884 (11th Cir.1989)).

**16.** The court emphasizes that if one is innocent owner, no amount of that person's funds can be

forfeited, but if one is wrongdoer, full value of the property can be forfeited when some funds are traceable to drug transactions. *One Single Family Residence*, 933 F.2d at 981–82.

§ 881(a)(6) & (7) (brackets conform to subsection (7)). "Innocent owners are those who have no knowledge of the illegal activities and who have not consented to the illegal activities." *United States v. One Single Family Residence,* 995 F.2d 1558, 1560 (11th Cir.1993) (quoting *United States v. 15603 85th Ave. North, Lake Park,* 933 F.2d 976, 981 (11th Cir.1991)).

█ Moreover, the Eleventh Circuit has adopted the *Calero–Toledo* standard for purposes of defining the innocent owner exceptions contained in § 881(a)(6) and (7).[17] *United States v. One Parcel of Real Estate,* 963 F.2d 1496, 1504 (11th Cir.1992) (applying the *Calero–Toledo* standard to § 881(a)(7) proceeding); *United States v. 15603 85th Avenue North,* 933 F.2d 976, 982 (11th Cir.1991) (holding that the "reasonably possible" language of *Calero–Toledo* applies to § 881(a)(6) proceedings). The court stresses that the innocence of the claimant, in and of itself, is an insufficient defense to forfeiture. *United States v. One (1) 1983 Homemade Vessel Named Barracuda,* 625 F.Supp. 893, 898 (S.D.Fla.1986), *aff'd,* 858 F.2d 643 (11th Cir. 1988) (citing *United States v. One 1957 Rockwell Aero Commander 680 Aircraft,* 671 F.2d 414, 417 (10th Cir.1982), *Calero–Toledo,* 416 U.S. at 683–90, 94 S.Ct. at 2091–95). Rather, this "heavy burden of proof" requires Mr. Martin to prove more than "he was entirely free of any involvement in or knowledge of the unlawful conduct." *United States v. One (1) 1983 Homemade Vessel Named Barracuda,* 858 F.2d 643, 647 (11th Cir.1988). He also "must demonstrate that he did everything he reasonably could have done to avoid having his property put to an unlawful use." *Id.* Thus, to prevail on the defense of innocence ownership, Mr. Martin must establish

that "(1) he was not involved in the wrongful activity, (2) he was not aware of the wrongful activity, and (3) he had done all that reasonably could be expected to prevent the proscribed use of the property." *United States v. One (1) 1981 65' Skokum Motor Sailor Ketch Named Silurian,* 717 F.Supp. 1546, 1550 (1989) (citing *Calero–Toledo,* 416 U.S. at 663, 94 S.Ct. at 2082).

█ In light of the foregoing Fifth Amendment discussion, the court finds it hard to believe that Mr. Martin was not involved or aware of the wrongful activity. Nevertheless, the court will inquire into the third element of the *Calero–Toledo* standard. For purposes of § 881(a)(7), this element requires Mr. Martin "to show that he took all reasonable steps to prevent the illegal use of his property." *One Parcel of Real Estate,* 963 F.2d at 1505. Specifically, he must do "everything that he could reasonably be expected to do to prevent the subject property from being used to commit, or to facilitate the commission of violation of the drug laws." *Id.* For purposes of § 881(a)(6), this element requires Mr. Martin to show that " 'everything reasonably possible was done' to disentangle the property from the illegal activity." *Id.* at 1504 (quoting *United States v. 15603 85th Avenue North,* 933 F.2d 976, 982 (11th Cir.1991)). Essentially, these are the same test with minor adjustments made to conform to the specific wording of the two subsections.[18]

The court stresses that this standard does not require Mr. Martin to make all efforts to prevent the illicit use of the defendant property, but rather, "he need merely make all reasonable efforts." [19] *Id.* In defining "rea-

---

**17.** The background of the "reasonably possible" language of the *Calero–Toledo* standard has been summarized by the Eleventh Circuit as follows:

The "all reasonable efforts" language is derived from *Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 686, 94 S.Ct. 2080, 2094–95, 40 L.Ed.2d 452 (1974), in which property had been seized pursuant to a Puerto Rican forfeiture statute. In that case, the Supreme Court [of the United States] noted, in dictum, that it might be "difficult" to reject the constitutional claim of an owner whose property has been subject to forfeiture, when that owner has proven not only that he was uninvolved in and unaware of wrongful activity,

but who has proven that he has done all that reasonably could be expected to prevent the proscribed use of his property. *Id.*

*One Parcel of Real Estate,* 963 F.2d at 1504.

**18.** The court notes that § 881(a)(6) parallels § 881(a)(7), containing an identically worded innocent owner exception. *One Parcel of Real Estate,* 963 F.2d at 1504.

**19.** The Eleventh Circuit has stated that "reasonableness limits the burden" of demonstrating lack of consent. *Id.* at 1505 (quoting *United States v. Forfeiture, Stop Six Center,* 781 F.Supp. 1200, 1209 n. 6 (N.D.Tex.1991)). The reasoning behind this limitation is that "an owner cannot

sonable efforts," the Eleventh Circuit has stated as follows:

> The reasonable efforts criteria can be satisfied by contacting and cooperating with law enforcement authorities, especially when a claimant is unable to halt the drug traffic on his own. 'Although we do not require claimants to work alongside these agents in their effort to combat drug dealers, we insist that claimants under no immediate threat of reprisal either communicate their knowledge to police, or attempt to remove themselves from the scene of illegal activity.'

*Id.* at 1506 (quoting *United States v. Sixty Acres in Etowah County,* 930 F.2d 857, 861 (11th Cir.1991)). Other specific efforts which have been deemed reasonable include "nail[ing] windows shut, put[ting] locks on doors, kick[ing] ... drug addicted children out of the house, and ... encourag[ing] ... drug-addicted children to attend drug treatment programs." *Id.* at 1505–06 n. 8. The court also emphasizes that in deciding whether Mr. Martin has taken all reasonable steps, it will view the facts in light of his individual situation and personal limitations. *See United States v. One Parcel Property,* 797 F.Supp. 933, 938 (M.D.Ala.1992).

In apply the foregoing standards, the court finds that Mr. Martin has failed to mention any steps he took to discourage illicit activity on his properties or to disentangle the properties from the illegal activity. Thus, even if the court considers Mr. Martin's affidavit, his mere assertion of innocence is not enough to satisfy *Calero–Toledo's* demanding test of innocence. *See One 1983 Homemade Vessel Named Barracuda,* 858 F.2d at 648. Hence, the court concludes that he has not set forth evidence sufficient to avoid a § 881(a)(6) or (7) forfeiture.

### CONCLUSION

In sum, the United States has met its burden of proving that it had probable cause to seize the defendant properties and initiate this forfeiture action. Mr. Martin has failed to prove by a preponderance of the evidence that the defendant properties should not be subject to forfeiture. For the foregoing reasons, it is CONSIDERED and ORDERED that the United States' motion for summary judgment as to Douglas Eugene Martin's claim and the United States' motion to strike be and the same are hereby GRANTED.

It is further CONSIDERED and OR-DERED that the United States' motion for summary judgment as to Margaret and Weida Martin's claims be and the same is hereby DENIED. As a result, further proceedings are required to adjudicate claimants Margaret and Weida Martin's innocent owner defenses and their interest in said real properties, and such proceedings are set for the December 4, 1995 trial term. A judgment in accordance with this memorandum opinion shall be entered separately.

### JUDGMENT

In accordance with the attached memorandum opinion and Rule 58 of the *Federal Rules of Civil Procedure,* it is CONSIDERED, ORDERED and ADJUDGED that all claimant Douglas Eugene Martin's right, title and interest to and in defendant parcel one and defendant parcel two be and the same are hereby FORFEITED to the United States of America.

It is further CONSIDERED, ORDERED and ADJUDGED that defendant currency in the amount of five thousand, six hundred thirty-one and no/100 dollars ($5,631.00), together with the lawful interest thereon, be and the same is hereby FORFEITED to the United States of America.

It is further CONSIDERED, ORDERED and ADJUDGED that defendant checks and money order in the amount of three thousand, two hundred seventy-two and 74/100 dollars ($3,272.74), together with the lawful interest thereon, be and the same is hereby FORFEITED to the United States of America.

It is further CONSIDERED, ORDERED and ADJUDGED that all costs herein incurred associated with Douglas Eugene Mar-

---

'reasonably' be expected to succeed at preventing illegal use of his property when the police have been incapable of doing the same. Courts 'do not expect the common land owner to eradicate a problem which our able law enforcement organizations cannot control.' " *Id.* (citations omitted).

tin's claim be and the same are hereby taxed against claimant Douglas Eugene Martin, for which let execution issue.